IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FELICIA BRUNNER, | : Civil No. 1:25-CV-1021 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I.    Introduction

Felicia Brunner filed an application under Title II of the Social Security Act for disability benefits on November 26, 2022. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Brunner was not disabled from her alleged onset of disability, September 19, 2019, through the date she was last insured, March 31, 2021.[2]

---

[1] While the plaintiff names the Social Security Administration as a defendant, "[t]he law is clear that the only proper defendant in an action challenging the denial of Social Security benefits is the Commissioner of Social Security." *Liberto o/b/o J.L. v. Berryhill*, 2017 WL 11649669, at *4 (M.D. Pa. Sept. 11, 2017) (citing 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(d)).

[2] Tr. 89.

Brunner now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Felicia Brunner filed for disability benefits, alleging disability due to gastric paresis, anxiety and depression, cyclical vomiting syndrome, arthritis, gastroesophageal reflux disease ("GERD"), asthma, liver disease, and other impairments.[4]  Brunner was 60 years old at the time of her alleged onset of disability, placing her in the category of closely approaching retirement age, she had at least a high school education, and she had past work as a food service manager, golf club manager, and sales clerk.[5]

---

[3] *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019).
[4] Tr. 182.
[5] Tr. 88, 100-01, 182.

The administrative record in this case reveals that Brunner suffered from a host of impairments during the relevant period. Records from prior to the alleged onset date indicate that Brunner was diagnosed with GERD, insomnia, arthritis, and joint pain in July of 2018.[6] In June of 2019, Brunner presented to St. Luke's Gastroenterology Specialists complaining of nausea, vomiting, abdominal pain, and abnormal bowel habits.[7] Her prior imaging was unremarkable.[8] She was advised to start a new medication and continue with her current nausea medication.[9]

In August of 2019, just prior to the alleged onset date, she underwent a gastric emptying study, which was significantly delayed, and was started on medication.[10] Her specialist noted that her symptoms, which included severe nausea and vomiting, sounded like cyclical vomiting syndrome.[11] Brunner reported significant improvement

---

[6] Tr. 1017.
[7] Tr. 644.
[8] *Id.*
[9] *Id.*
[10] Tr. 634.
[11] *Id.*

in her symptoms in October after starting medication, including no vomiting or abdominal pain and minimal nausea.[12]

Brunner followed up with her gastroenterology specialist in January of 2020, at which time it was noted that she underwent Botox treatment that lasted only two weeks.[13] She reported that she was experiencing symptoms but not on a daily basis, and that they were worse in the morning.[14] In April, Brunner reported increased abdominal pain but noted her nausea and vomiting were manageable.[15] She was advised to continue her medications.[16] Her symptoms became worse in June, and her provider noted that her medications only helped sometimes.[17] By October, Brunner reported that her symptoms occurred almost daily and were becoming debilitating.[18] She further reported experiencing joint pains and diffuse rashes, but noted that since starting prednisone, she

---

[12] Tr. 630-31.
[13] Tr. 618-19.
[14] Tr. 619.
[15] Tr. 616.
[16] Tr. 617.
[17] Tr. 609.
[18] Tr. 592.

4

was feeling better than she had in months.[19]   She tapered off her medications and was advised to reevaluate in one month.[20]

In January of 2021, Brunner underwent a laproscopic cholecystectomy after a CT scan showed large gallstones and sludge.[21] Brunner presented to the emergency room in March, at which time she reported abdominal distention and discoloration of her eyes.[22] A physical examination revealed abdominal distention and tenderness.[23] Brunner underwent a CT scan, which showed abdominal ascites and portal hypertension, and her bilirubin levels were "markedly elevated."[24] Brunner was ultimately admitted to obtain an MRI and GI consultation.[25] She also underwent a paracentesis.[26] Upon discharge, it was noted that Brunner may have a new onset of cirrhosis, and she was encouraged to stop drinking alcohol.[27]

---

[19] *Id.*
[20] *Id.*
[21] Tr. 577-78, 586.
[22] Tr. 529.
[23] Tr. 531.
[24] Tr. 533, 535.
[25] Tr. 535.
[26] Tr. 544.
[27] Tr. 563-64.

Treatment notes from a post-hospital follow up appointment indicate Brunner was diagnosed with alcoholic cirrhosis, at which time Brunner admitted that she was drinking two to three drinks per day, but that she had abstained from alcohol since her hospital admission.[28]  It was further noted that since she stopped drinking alcohol, most of her GI issues had resolved.[29]  At a follow up appointment in May, it was noted that she stopped drinking alcohol and was doing "very well," she no longer experienced nausea and vomiting episodes, and her edema had resolved.[30]

In April of 2022, Brunner presented to the emergency room after a fall.[31]  At a follow up appointment with cardiology, it was noted that Brunner had alcoholic cirrhosis, and that she gets lightheaded if she gets up too fast.[32]  She was diagnosed with syncope and encouraged to wear compression stockings and to sit if she feels lightheaded.[33]  Notes from a

---

[28] Tr. 519.
[29] *Id.*
[30] Tr. 505.
[31] Tr. 492.
[32] Tr. 485.
[33] Tr. 491.

hematology clinic visit in June of 2022 indicate that Brunner had thrombocytopenia and macrocytic anemia, of which the likely etiology was her history of alcohol abuse and cirrhotic liver.[34]

Brunner complained of memory loss and dizziness in July of 2022, and she was referred to physical therapy.[35]  Her initial evaluation indicated that she experienced vertigo, including a room-spinning sensation that occurred multiple times per day.[36]  She also reported memory loss.[37]  In August, she reported falling in her yard, and that her dizzy spells were not fully resolved.[38]  Treatment notes from December indicated that Brunner did not improve with physical therapy, and that she had difficulty with fine motor movements and experienced more falls.[39]  It was further noted that Brunner had "f[allen] off the wagon and had alcohol about a week ago."[40]  At a follow up appointment in February of 2023, Brunner reported becoming more forgetful, falling more often,

---

[34] Tr. 453-54.
[35] Tr. 421, 425.
[36] Tr. 421.
[37] *Id.*
[38] Tr. 418.
[39] Tr. 440.
[40] *Id.*

7

and having trouble walking in a straight line.[41]  A physical examination was unremarkable neurologically, and her motor function and coordination were intact.[42]

Regarding her shoulder pain, Brunner received cortisone injections in April of 2023, when she complained of increased pain after doing yardwork and spring cleaning.[43]  In May, she was seen for her chronic pain, at which time it was noted she was limited with respect to medications due to her cirrhosis.[44]  She was referred to physical therapy for her neck pain.[45]  Brunner also underwent physical therapy for her shoulder pain in June of 2023, at which time she reported some improvement in her symptoms.[46]

It is against the backdrop of this record that an ALJ held a hearing on Brunner's disability application on March 14, 2024.[47]  Brunner and a

---

[41] Tr. 943.
[42] Tr. 945-46.
[43] Tr. 976.
[44] Tr. 1063.
[45] Tr. 1031.
[46] Tr. 1005.
[47] Tr. 94-121

Vocational Expert ("VE") both appeared and testified at this hearing.[48] Following this hearing, on May 20, 2024, the ALJ issued a decision denying Brunner's application for disability benefits.[49]  The ALJ first concluded that Brunner had not engaged in substantial gainful activity since her alleged onset of disability, September 1, 2019, through her date last insured, March 31, 2021.[50]  At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Brunner suffered from the following severe impairments: gastrointestinal disorder, including gastroparesis, GERD, and cyclical vomiting syndrome; liver disorder, including alcoholic cirrhosis; and a history of arthritis.[51]  At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[52]

Between Steps 3 and 4, the ALJ then concluded that Brunner:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except limited to occupations that require no more than frequent postural maneuvers, such as balancing, stooping, kneeling, crawling,

---

[48] *Id.*
[49] Tr. 72-93.
[50] Tr. 77.
[51] Id.
[52] Tr. 79-81.

9

crouching, and climbing on ramps and stairs, and must avoid occupations that require climbing on ladders ropes and scaffolds.[53]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Brunner's reported symptoms. With respect to the medical opinion evidence regarding Brunner's physical impairments, the ALJ considered the opinions of the state agency consultants, Drs. Kim and Ritner, and found them generally persuasive.[54] These providers opined that Brunner could perform light work with occasional postural limitations, except she could never climb ladders ropes or scaffolds.[55] The ALJ reasoned that these opinions were consistent with and supported by the record, which showed no intervention for rheumatological issues, demonstrated that Brunner's nausea and vomiting symptoms resolved when she stopped drinking, and indicated mostly unremarkable clinical findings and conservative treatment.[56]

---

[53] Tr. 81.
[54] Tr. 87.
[55] Tr. 188-90, 200-03.
[56] Tr. 87.

10

With respect to Brunner's symptoms, the ALJ found that Brunner's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[57]  Brunner testified that she had not worked at all since her alleged onset date of September 1, 2019.[58]  She estimated she could lift between 10 and 15 pounds due to her shoulder issues.[59]  She reported trying to walk her dog often, performing general housework, and gardening.[60]  As to her gastrointestinal issues, Brunner testified that she experienced her symptoms sporadically, about every two weeks, but that they were debilitating and kept her "down all day."[61]  She reported that prior medications and treatments helped temporarily, but that her symptoms always came back.[62]  Brunner stated that she had been sober since her March 2021 hospital admission, and that she was told her

---

[57] Tr.
[58] Tr. 101.
[59] *Id.*
[60] Tr. 102-03.
[61] Tr. 105.
[62] Tr. 107.

11

drinking was not connected to her GI issues.[63]  Regarding her past work, Brunner testified that the jobs were physically demanding, requiring her to lift up to 40 pounds at times.[64]

The ALJ ultimately found Brunner's testimony to be inconsistent with the objective clinical findings.[65]  The ALJ recounted the objective medical evidence, including the imaging and treatment relative to Brunner's impairments during the relevant period.  The ALJ noted that Brunner mainly treated with medication for her gastrointestinal issues, and that treatment notes indicated her symptoms resolved when she stopped drinking alcohol.[66]  With respect to her joint pain, the ALJ noted that she visited rheumatology in 2018 but that the record did not contain any further rheumatological treatment.[67]  The ALJ further considered records post-dating Brunner's date last insured, noting that the records

---

[63] Tr. 108-09.  The ALJ did ask some follow-up questions of Brunner related to her testimony that she was sober since March of 2021, since medical records after that time indicated that Brunner was using alcohol. *See* Tr. 116-17.

[64] Tr. 111.

[65] Tr. 82-86.

[66] Tr. 84-85.

[67] Tr. 83.

showed Brunner's gastrointestinal symptoms resolved, and that she participated minimally in physical therapy.[68] Ultimately, the ALJ found that Brunner was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Brunner could perform her past work as a food service manager, golf club manager, and sales clerk.[69] The ALJ explicitly noted that Brunner actually performed these occupations at a medium level of exertion, but after utilizing the VE's testimony, found she could perform these light and sedentary positions as generally performed in the national economy.[70] Accordingly, the ALJ found that Brunner had not met the stringent standard prescribed for disability benefits and denied her claim.[71]

This appeal followed. On appeal, Brunner argues that the ALJ's decision is not supported by substantial evidence because Brunner could not perform her past work.[72] This case is fully briefed and is therefore

---

[68] Tr. 85-86.
[69] Tr. 88.
[70] *Id.*
[71] Tr. 89.
[72] Doc. 10.

ripe for resolution.  For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[73]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[74]   Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[75]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing

---

[73] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[74] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[75] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

evidence."[76]   However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[77]   The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[78]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[79]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[80]   Thus, the

---

[76] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[77] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

[78] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[79] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[80] Id.

15

question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[81]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[82] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[83] This does not require the ALJ

---

[81] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[82] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[83] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[84]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[85]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[86] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national

---

[84] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[85] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[86] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

economy."[87]   To receive benefits under Title II of the Social Security Act,

a claimant must show that he or she is under retirement age, contributed

to the insurance program, and became disabled prior to the date on which

he or she was last insured.[88]

In making this determination, the ALJ follows a five-step

evaluation.[89]   The ALJ must sequentially determine whether the

claimant: (1) is engaged in substantial gainful activity; (2) has a severe

impairment; (3) has a severe impairment that meets or equals a listed

impairment; (4) is able to do his or her past relevant work; and (5) is able

to do any other work, considering his or her age, education, work

experience and residual functional capacity ("RFC").[90]

Between Steps 3 and 4, the ALJ must also determine the claimant's

residual functional capacity (RFC).  RFC is defined as "that which an

individual is still able to do despite the limitations caused by his or her

---

[87]  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[88] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[89] 20 C.F.R. §§404.1520(a), 416.920(a).
[90]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

impairment(s)."[91]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[92]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[93]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[94]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[95]

---

[91] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[92] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[93] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[94] *Mason*, 994 F.2d at 1064.

[95] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[96]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[97]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected

---

[96] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[97] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

the medical opinion based upon an assessment of other evidence.[98] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[99] Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[100]

## C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[101] Our review of those determinations is deferential.[102] However, it is incumbent upon the ALJ to "specifically identify and

---

[98] *Biller*, 962 F. Supp. 2d at 778–79.
[99] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[100] *Burns,* 312 F.3d 113.
[101] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).
[102] Id.

explain what evidence he found not credible and why he found it not credible."[103]   An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[104]   As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[105]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[106]   Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[107]

---

[103] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
[104] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).
[105] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").
[106] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.
[107] SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[108] During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[109] This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[110]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory

---

[108] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.
[109] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[110] Id.

findings.[111] Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[112] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.[113]

### D. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[114] Judged against this deferential

---

[111] SSR 16-3p.
[112] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).
[113] *Id.*
[114] *Biestek*, 139 S. Ct. at 1154.

standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Brunner primarily relies on her hearing testimony, which she claims establishes that she could not perform her past work, to argue that the ALJ's decision was not supported by substantial evidence.[115] At Step 4 of the sequential process, the ALJ must determine whether a claimant can perform his or her past work. This determination requires the ALJ to: (1) make a specific finding as to the claimant's RFC; (2) make findings regarding the physical and mental demands of the past work; and (3) compare the RFC to the past work to determine if the claimant is capable of performing the past work.[116] An ALJ should consider the claimant's testimony regarding her past work, the medical evidence of the claimant's impairments, and, if needed, information from sources such as VE testimony or the DOT with respect to the requirements of the work as generally performed.[117] "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific

---

[115] Doc. 10 at 2-7.
[116] *Burnett*, 220 F.3d at 120 (citations omitted).
[117] SSR 82-62, 1982 WL 31386 (1982).

25

job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'"[118]

Here, the ALJ found that Brunner could perform her past work, not as she actually performed it, but as it is generally performed in the national economy.[119]  The ALJ recognized that Brunner's testimony, as well as the testimony of the VE, established that Brunner actually performed her past work at a medium exertional level.[120]  But these jobs, as set forth in the DOT, are classified as light or sedentary positions.[121] The VE specifically testified that an individual with the limitations outlined in the ALJ's RFC "could perform the salesclerk, the club manager, and the food service manager as actually -- I mean as generally but not as actually performed."[122]  Brunner's counsel asked several follow

---

[118] *Id.*

[119] Tr. 88.

[120] Tr. 88, 118.

[121] Tr. 88; *see* DICOT 187.167-106, 1991 WL 671389 (Manager, Food Service) (light work); DICOT 187.167-114, 1991 WL 671390 (Manager, Golf Club) (sedentary work); DICOT 290.477-014, 1991 WL 672554 (Sales Clerk) (light work).

[122] Tr. 118.

up questions, to which the VE again responded that an individual with Brunner's limitations could not perform the work as actually performed, but could perform it as generally performed.[123]  Thus, the ALJ followed the steps as set forth in the regulations to determine that Brunner was not disabled because she could perform her past work as it is generally performed.[124]

Brunner's contention that the ALJ was required to consider the transferability of skills is misplaced.  It is true that the regulations provide for a specific finding of transferability of skills if a person is closely approaching retirement age and limited to light work.[125]  But this determination applies at Step 5, when an ALJ is determining if the plaintiff can perform work in the national economy *other than* her past work.  The regulations instruct that "[t]ransferability of skills is an issue only when an individual's impairment(s), though severe, . . . does prevent the performance of past relevant work (PRW), and that work has been

---

[123] Tr. 119-20.

[124] *See Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 159-60 (3d Cir. 2009) (affirming ALJ's finding that plaintiff could perform her past work as generally performed, and as such, was not disabled).

[125] *See* 20 C.F.R. 404.1568(d)(4).

27

determined to be skilled or semiskilled."[126]  Here, the ALJ found that the plaintiff was capable of performing her past relevant work as generally performed.  Accordingly, he was not required to determine whether she had transferable skills, and there is no basis for a remand.

Finally, Brunner contends that the ALJ's second hypothetical to the VE established that Brunner could not perform any work.[127]  This hypothetical included limitations that the individual would need frequent breaks and absences, up to 15% or more of a week or month, and the VE responded that no jobs would be available for an individual with such limitations.[128]  These limitations appear to be based on the claimant's testimony.[129]  But, contrary to the plaintiff's argument, the ALJ did not categorically accept Brunner's testimony regarding her limitations.  As we have explained, the ALJ found that Brunner was not as limited as she alleged and recounted the medical evidence that contradicted Brunner's testimony regarding her impairments, including

---

[126] SSR 82-41, 1982 WL 31389 (1982).
[127] Doc. 10 at 6-7.
[128] Tr. 119.
[129] *Id.*

the unremarkable examination findings, conservative treatment, and the fact that her GI symptoms resolved after she stopped drinking alcohol. The ALJ was not required to accept Brunner's testimony with respect to her symptoms simply because he found her impairments to be severe. Rather, the ALJ specifically identified the medical records that established Brunner was not as limited as she alleged. We find no error with the ALJ's decision.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 2nd day of April 2026.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge